IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REUBEN A. JACOBS, SR.,<br><br>    Plaintiff,<br><br>  v.<br><br>CUMBERLAND COUNTY DEPARTMENT OF CORRECTIONS and COUNTY OF CUMBERLAND BOARD OF CHOSEN FREEHOLDERS,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>CIVIL NO. 09-0133 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Reuben A. Jacobs, Sr.
22 Garfield Avenue
Bridgeton, NJ 08302
    Plaintiff appearing pro se

Steven L. Rothman, Esq.
LIPMAN ANTONELLI BATT GILSON MALESTEIN ROTHMAN & CAPASSO
110 N. Sixth Street
P.O. Box 729
Vineland, NJ 08362-0729
    Attorney for Defendants

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

This matter comes before the Court on Defendants' motion for summary judgment. [Docket Item 25.]  This dispute arises out of a brutal attack suffered by pro se Plaintiff Reuben Jacobs at the hands of other inmates of the Cumberland County Jail while Mr. Jacobs was being held as a pre-trial detainee.  The violence of Plaintiff's attack and the apparent half-hearted response by

Defendants' employees is concerning to the Court.  However, because Plaintiff has not come forward with sufficient evidence to create a material factual dispute regarding either his compliance with the requirements of the New Jersey Tort Claims Act, N.J. Stat. Ann. 59:1-1, et seq. ("TCA"), evidence that defendants acted with the requisite deliberate indifference, or evidence of a policy or custom on the part of the named Defendants that caused Plaintiff's injuries, the Court must grant Defendants' motion for summary judgment.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On August 4, 2007, Plaintiff was being held in the Cumberland County Jail on charges that were subsequently dismissed prior to trial.[1]  On that date, Plaintiff was assaulted by three or four other inmates in the jail.  The assault continued until prison guards arrived at the scene approximately five to ten minutes after it began.  Plaintiff sustained severe injuries in the assault including potentially permanent damage to his right eye and left ear, for which he argues Defendants are responsible.

In the evening of August 4, 2007, Plaintiff returned from dinner to the A-Block, a maximum security section of the jail to

---

[1] The facts are taken from Plaintiff's Complaint, Supporting Statement attached to the Complaint, and exhibits attached to the Parties' submissions.  All facts related here are not in dispute.

which he had been assigned earlier in the day.  (Jacobs Dep. 12:19-13:11.)  He was sitting in a cell talking with another inmate when he was handed a note by an inmate he did not recognize.  (Id. at 13:22-25.)  The note appeared to be addressed to an inmate named Darius Hudgon and consisted of an instruction to members of the Bloods street gang housed in A-Block: "that Reuben Jacobs is food to all bloods and is to be eaten by the bloods residing in A-Block."  (Compl. Supp. Statement at 3.)  Shortly after Plaintiff read the note, Darius, its intended recipient, approached Plaintiff and asked whether Plaintiff had a letter for him.  (Jacobs Dep. 16:21.)  Plaintiff responded by handing Darius the note.  (Id. at 16:22.)  Plaintiff then stepped from the cell into the A-Block common area, where he was attacked minutes later by Darius and two or three other inmates.  (Id. at 17:18-25.)

There were no guards present in the common area when the fight began, but within five to ten minutes, guards arrived at the scene, putting an end to it.  (Id. at 18:5-19:17.)  The record is devoid of competent evidence that would establish what caused the guards to arrive when they did, but Plaintiff speculates that they came because they could hear the fight from where they were positioned outside of A-Block.  (Id. at 19:20-21.)  Plaintiff did not apparently call for help from the guards before the attack began.  (Id. at 19:18-21.)  There is evidence

suggesting that the guards did not respond to the fight as quickly as they could have, but instead "took their time to respond to the screams and hollering". (Campbell Statement.) To enter the A-Block common area where the fight took place would require a guard to open multiple locked gates. (Id. at 22:16-22.)

During the course of the fight, Plaintiff sustained several injuries. He was kicked in the right eye, causing sufficient damage to break facial bones, requiring a surgically implanted metal plate and resulting in ongoing vision problems. (Compl. 6; Jacobs Dep. at 19:11-12, 24:12-25.) Additionally, one of the assailants bit off part of Plaintiff's ear, which doctors were unable to subsequently reattach. (Compl. 6; Jacobs Dep. at 24:7.) Plaintiff also states that the attack has left him with frequent headaches and difficulty sleeping. (Compl. 6.)

After the assault, Plaintiff was taken to the Cumberland County Jail infirmary, where he was seen by a nurse who did not reattach the severed portion of his ear. (Compl. Supp. Statement at 3; Jacobs Dep. at 25:14-18.) Plaintiff alleges that he heard the unidentified nurse state that the severed portion of the ear had been improperly stored by one of the prison guards. (Id.) Plaintiff was subsequently sent by ambulance to two separate hospitals to treat his injuries that evening, but his ear was never reattached, allegedly because of the storage of the severed

4

portion of the ear.  (Jacobs Dep. at 25:18-27:3.)  The record contains only Plaintiff's testimony relating these statements about the storage of his ear; there is no testimony or affidavits from the declarants themselves.

Plaintiff filed his pro se Complaint on January 12, 2009, which was docketed on March 23, 2009. [Docket Items 1 & 9.] Plaintiff named only the Cumberland County Department of Corrections and the County of Cumberland Board of Chosen Freeholders, who were both served on October 30, 2009. [Docket Item 14.]  Defendants answered on November 24, 2009.  [Docket Item 16.]  Defendants filed their motion for summary judgment on May 10, 2010.  On September 2, 2010, Plaintiff requested an extension of time to file opposition and complained that additional discovery was required to adequately oppose.  [Docket Item 30.]  The Court granted Plaintiff an extension to file opposition until September 30, 2010 and ordered Defendants to respond to Plaintiff's discovery requests.  [Docket Items 31 & 35.]   Due to Plaintiff's changes in address, the Court granted both parties further time to comply with the Court's orders; Defendants served the requested discovery material on Plaintiff on November 4, 2010.  [Docket Item 40.]  On November 22, 2010, the Court again extended Plaintiff's deadline to file opposition, this time to November 29.  [Docket Item 42.]  Plaintiff's opposition, dated November 25, was received by the Court on

5

December 3, 2010.

The record contains Plaintiff's pro se Complaint and Supplementary Statement; Plaintiff's deposition, taken on April 12, 2010 (attached as Exhibit C to Defendant's motion for summary judgment); the certification of counsel Steven Rothman, attached to Defendant's motion for summary judgment; the certifications of Captain Michael Palau of the Cumberland County Jail and Nurse Genean Pierce of the Cumberland County Department of Corrections, which were included in Defendants' response to the Court's order for additional discovery on November 4, 2010; the signed statement of William R. Campbell, an inmate who witnessed the attack on August 4, 2007 which was attached to Plaintiff's opposition; and the prison log book for A-Block on August 3 and 4, 2007, attached to Plaintiff's opposition.

**III. DISCUSSION**

    **A.  Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment will not be denied based on mere allegations or denials

in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  However, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

Where the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case.  Fed. R. Civ. P. 56(c)(1)(B); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

"Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally." Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).  However, pro se plaintiffs are not relieved of the obligation to set forth facts sufficient to survive summary judgment.  Cf Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding that "inartful" pleadings by pro se plaintiff should not subject claim to dismissal, but Plaintiff must still offer proof of such claims); Zilich v. Lucht, 981 F.2d 694, 695-96 (3d Cir. 1992) (holding pro se plaintiff should have opportunity to respond to evidence outside the pleadings with his own evidence before claim is dismissed).

**B.   Section 1983 Claims**

Plaintiff claims that Defendants are liable to him for his injuries for failing to adequately protect him from his fellow inmates and for failing to provide adequate medical care by improperly storing his partially severed ear.  Plaintiff's Complaint does not specify whether he seeks relief exclusively under 42 U.S.C. § 1983 for alleged violations of his constitutional rights, or whether he also seeks relief under state tort law.  Liberally construing the Complaint, the Court will evaluate whether summary judgment is appropriate for either form of relief.

For both Plaintiff's failure-to-protect claim and his inadequate-medical-care claim, Defendants argue that summary judgment is appropriate against Plaintiff's Section 1983 claims for two reasons: 1) because Plaintiff cannot point to evidence indicating that Defendants acted with the requisite deliberate indifference necessary to establish a constitutional violation, and 2) because Plaintiff cannot point to evidence indicating a policy or custom necessary for municipal liability to attach to these particular defendants.  Because the record lacks any evidence indicating either the necessary subjective culpability under the Fourteenth Amendment[2] or sufficient direct

---

[2] Because Plaintiff was not a sentenced prisoner, Defendants' reliance on the Eighth Amendment standard for determining whether a prisoner is subject to cruel and unusual

responsibility of the named Defendants, beyond mere <u>respondeat superior</u>, the Court will grant summary judgment for Plaintiff's Section 1983 Claims.

### 1. <u>Failure to Protect</u>

Plaintiff's failure-to-protect claim alleges that Defendants' actions, by failing to protect him from his fellow inmates, violated his liberty interest in his personal security and well-being, which is governed by the substantive due process protections of the Fourteenth Amendment. Defendants argue that summary judgment is appropriate against Plaintiff's failure-to-protect claim because 1) he is unable to establish the requisite subjective culpability of deliberate indifference, and 2) there is no evidence that any action or policy on the part of the named Defendants was the cause of Plaintiff's injuries.

#### a. Deliberate indifference

A key question, in assessing a pretrial detainee's failure-to protect-claim, is whether Defendants' conduct constituted a violation of his constitutional rights. "To answer this question, we must determine what level of conduct is egregious

---

punishment is doctrinally improper. <u>See</u> <u>Burton v. Kindle</u>, 2010 WL 4487121, Slip. Op. No. 10-2915 at *2 (3d Cir., Nov. 10, 2010) ("Thus, sentenced prisoners are protected from only punishment that is 'cruel and unusual,' while pretrial detainees are protected from any punishment.") (<u>citing</u> <u>Hubbard v. Taylor</u>, 399 F.3d 150, 166-67) (3d Cir. 2005)). As will be discussed below, the Court will independently determine whether the deliberate indifference standard applied by Defendants is appropriate in this case.

9

enough to amount to a constitutional violation." A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 579 (3d Cir. 2004) (internal quotation marks omitted).

"When executive action is at issue, a violation of the Fourteenth Amendment right to substantive due process may be shown by conduct that 'shocks the conscience'." A.M. ex rel. J.M.K., 372 F.3d at 579. In the context of a pretrial detainee failure-to-protect claim, the Third Circuit has not determined a specific level of subjective culpability of the defendant's meets the "shocks the conscience" standard, but most cases that have considered the issue have stated that at a minimum, the Eighth Amendment "deliberate indifference" standard will suffice. See, e.g., Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 456 (3d Cir. 1996) (holding that plaintiff "is certainly entitled to the level of protection provided by the Eighth Amendment"); A.M. ex rel. J.M.K., 372 F.3d at 587 (applying Eighth Amendment standard to claim that child care workers failed to protect plaintiff juvenile detainee from attack). The Third Circuit has been clear, however, that "negligent conduct is never egregious enough to shock the conscience." A.M. ex rel. J.M.K., 372 F.3d at 579.

Therefore, borrowing the Eighth Amendment framework for failure to protect claims in this Fourteenth Amendment case, the Plaintiff must provide some evidence establishing three elements:

(1) that the conditions in which he was detained entailed a sufficiently serious risk of harm, Farmer v. Brennan, 511 U.S. 825, 834 (1994); (2) that the defendants acted with deliberate indifference to that risk, Id.; and (3) causation, Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). Defendants focus their attack first on Plaintiff's ability to prove the subjective element of deliberate indifference.

Defendants argue that Plaintiff has not introduced evidence that raises a dispute of fact over whether Defendants' conduct, by placing Plaintiff in A-Block and not responding quickly enough to his attack to prevent injury demonstrates deliberate indifference.  The Court agrees that Plaintiff has not met his burden on this element.  There is no evidence that Defendants placed Plaintiff in A-Block knowing he was likely to suffer this attack.  There is also no evidence that Plaintiff called for help prior to his attack.  Even the statement of William Campbell, that the guards "took their time to respond" (Campbell Statement, Pl.'s Ex. A) is insufficient to raise an inference of more than negligence, especially when considered alongside Plaintiff's testimony that the guards "came running" to break up the fight. (Jacobs Dep. 19:1-2.)  Plaintiff has therefore not met his burden on this element.

b. Section 1983 municipal liability

Plaintiff names no individual defendants such as the prison

11

guards who responded to the assault, but only the Cumberland County Department of Corrections and the Board of Chosen Freeholders.  Municipal entities such as counties and their agencies are considered "persons" for the purposes of Section 1983 liability, but are only liable for the policies or customs of the entity itself, and not for the specific acts of individual employees on a theory of respondeat superior.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) ("There is no respondeat superior theory of municipal liability, so a city may not be held vicariously liable under § 1983 for the actions of its agents"); Pinaud v. County of Suffolk, 52 F.3d 1139, 1157 (2d Cir. 1995) (recognizing that actionable claim under § 1983 against a county depends on harm stemming from the county's policy or custom).

Consequently, to survive summary judgment, Plaintiff must point to evidence in the record that raises a question of fact over whether either the Cumberland County Department of Corrections or the Board of Chosen Freeholders have established a policy or custom in violation of the Constitution's Fourteenth Amendment that caused Plaintiff's injuries.

Defendants argue that Plaintiff has not alleged any custom or policy on the part of the Defendants that would have caused his injuries.  The Court disagrees.  Reading the pleadings and

supporting filings liberally, the Court interprets Plaintiff's Supplementary Statement to allege that the guards in Cumberland County Jail's maximum security unit have a policy or custom of not patrolling the individual cell blocks with the frequency necessary to prevent potentially fatal altercations like his, or to respond quickly enough to prevent serious injuries like his when fights do break out.  The Supplementary Statement alleges:

> You have three (3) guards entrusted with the duty of safely overseeing at least ninety (90) to one hundred (100) maximum security inmates . . . They sit in a little booth located in the center of five (5) cell blocks . . . with at least three (3) key locked gates and one (1) electronic gate with a key locked panel stopping them from gaining access to these cell blocks . . . and to get their attention you sometimes have to yell and scream for at least five (5) minutes or longer which is enough time for someone to die.

(Compl. Supp. Statement at 2-3.)

Plaintiff does not, however, introduce any competent evidence in the record to support this allegation of the existence of a policy or custom.  Plaintiff testifies that there were no guards present in A-block on August 4, 2007, when the fight broke out.  (Jacobs Dep. at 18:18.)  He further testified that on this occasion, the guards took five to ten minutes to respond to the fight.  (Id. at 18:20-19:17.)  Additionally, the statement of William Campbell states that the guards "took their time to respond."  (Campbell Statement, Pl.'s Ex A.)  This evidence, however, does not raise a dispute of fact over whether it was the custom or policy of the guards, as established by

13

either of the named defendants, to not respond to fights for five to ten minutes.[3]  Plaintiff's and Mr. Campbell's testimony establish only that the prison guards did not respond to Plaintiff's attack for five to ten minutes on this occasion.  One cannot generalize from the delayed response in this one incident that there is a custom or policy of intentionally delayed response to assaults in the jail.  See Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 369 (E.D. Pa. 2002) (rejecting plaintiff's evidence of single incident of excessive force by police as sufficient evidence of pattern or policy necessary for municipal liability).

        2.    Failure to Provide Adequate Medical Care

Regarding Plaintiff's claim that Defendants are liable under Section 1983 for the inability of doctors to reattach his partially severed ear, Defendants again argue that Plaintiff fails to point to sufficient evidence of either a municipal policy that caused the violation or actions with sufficient culpability, such as deliberate indifference.

        a.  Municipal liability

On the issue of municipal liability, Defendants are correct that Plaintiff does not adequately allege a policy or custom on

---

[3] Indeed, some statements in Plaintiff's pleadings indicate that the guards' behavior on August 4, 2007, was contrary to the policy of the jail: "by procedure they are supposed to make rounds every thirty (30) minutes to chick [sic] on the inmates" (Compl. Supp. Statement at 2).

14

the part of Defendants.  Plaintiff alleges that when he arrived at the Cumberland County Jail infirmary, he overheard a nurse say that the severed portion of his ear had been improperly stored by a prison guard.  (Compl. Supp. Statement at 3.)  He says that this diagnosis was repeated by two other doctors that night before the ear was stitched up without the severed portion being reattached.  (Id.)  These statements, however, are hearsay and cannot be considered on summary judgment.  See Rutter v. Rivera, 74 Fed. Appx. 182, 185 (3d Cir. 2003) (holding that doctor's statement contained in a medical report not properly introduced as a business record is inadmissible hearsay).  Plaintiff argues in his opposition brief that Defendants have not provided the names or medical records of these medical providers (Pl.'s Opp. ¶ 8), but it is not Defendants' burden to do so.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ("the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case").[4]

---

[4] To the extent that Plaintiff argues in his opposition that Defendants have failed to provide necessary discovery, the appropriate course would have been to include in his opposition an affidavit under Rule 56(d), Fed. R. Civ. P. (former Rule 56(f)).  See Court's Order to Plaintiff on September 8, 2010 [Docket Item 31] ("If by [the opposition deadline] Plaintiff is still unable to oppose Defendants' summary judgment motion because of a lack of necessary discovery despite his own due diligence, Plaintiff must, at the least, file his opposition accompanied by his affidavit under Rule 56(f), Fed. R. Civ. P., specifying the reasons why he cannot present facts essential to

Even if the statements were introduced in admissible form, however, they would be insufficient to establish municipal liability as they only indicate, at most, negligent conduct on the part of the individual prison guards and do not indicate a policy or custom of the jail to improperly store severed ears. The Supreme Court has long held that negligence by prison staff alone does not rise to the level of a constitutional violation. <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property); <u>Davidson v. Cannon</u>, 474 U.S. 344, 347 (1986) (same).

    b. Deliberate indifference

In addition, negligent medical care, as alleged by Plaintiff here, is an insufficient level of culpability on the part of Defendants or their employees. As Plaintiff's claims are for inadequate medical treatment in violation of the Fourteenth Amendment, the Third Circuit has indicated that, even for pre-trial detainees such as the Plaintiff here, Plaintiff must provide evidence indicative of more than mere negligent care but

---

justify his opposition"). Moreover, the Court extended the time for filing opposition by more than five months from its original due date, at Plaintiff's request, until November 29, 2010, and the Court ordered Defendants to produce the discovery then sought by Plaintiff in the Court's Order of September 8, 2010 and letter-order of October 20, 2010, as well as Magistrate Judge Schneider's letter-order of September 14, 2010 [Docket Item 32], with which Defendants have complied.

deliberate indifference to a serious medical need.  See King v. County of Gloucester, 302 Fed. Appx. 92, 96 (3d Cir. 2008) (applying deliberate indifference standard to pretrial detainee's denial of medical care claim).  Plaintiff's allegations do not meet this standard; he alleges that the prison guards attempted to save the severed portion of his ear and transported him to two separate hospitals in an effort to reattach it.  Thus, the prison guards' alleged improper storage of the ear is, at most, negligence rather than deliberate indifference, and thus insufficient to state a constitutional violation.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) ("it is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference") (internal quotation marks omitted).

Thus, because the record lacks any evidence indicating any policy or custom on the part of the Defendants that could be said to have caused Plaintiff's serious injuries, and Plaintiff alleges only negligent conduct on the part of Defendants or their employees, the Court must grant summary judgment for Defendants on Plaintiff's Section 1983 claims.

       3.   State Tort Claims

To the extent that Plaintiff can be said to have raised any tort claims against defendants, for common-law negligence, for example, the Court finds that his recovery is barred under the

New Jersey Tort Claims Act, N.J. Stat. Ann. 59:1-1, et seq. ("Tort Claims Act"). The Tort Claims Act provides that to sue under state tort law any New Jersey public entity, such as Defendants here, a Plaintiff must first file a notice of claim within 90 days of the injury. Specifically, N.J. Stat. Ann. § 59:8-8 provides that

> A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law.

Thus, if a Plaintiff fails to file a notice of claim with the public entity within ninety days after the date of injury, his claim for recovery will be barred, absent narrow exceptions not applicable here. N.J. Stat. Ann. §§ 59:8-8(a), 59:8-9. See Lassoff v. State of New Jersey, 414 F. Supp. 2d 483 (D.N.J. 2006) ("A suit will be dismissed if the claimant did not provide a notice of claim to the entity within ninety days of the accrual of a cause of action.") (internal quotation marks and citations omitted).

In the present case, the record indicates that Plaintiff has not filed any notice of claim with either the Cumberland County Department of Corrections or with the Board of Chosen Freeholders. (Certification of Steven Rothman ¶ 12). Consequently, as it is more than 90 days after Plaintiff's injuries, New Jersey law prohibits Plaintiff bringing any

negligence claim under state law in this matter, and the Court will grant summary judgment for Defendants.

## IV. CONCLUSION

This case reveals a serious and chilling attack suffered by Plaintiff, a presumptively innocent detainee whose charges were later dismissed, at the hands of members of a violent street gang incarcerated in a county jail.  The Court takes seriously Plaintiff's allegations of negligent care in this case and is sympathetic to his injuries.  However, because the record lacks sufficient evidence to establish any dispute of material fact regarding conduct worse than negligence, a policy or custom of Defendants in violation of the Fourteenth Amendment that caused Plaintiff's injuries, or Plaintiff's compliance with the New Jersey Tort Claims Act, the Court will grant Defendants' motion for summary judgment.  The accompanying Order will be entered.


**December 8, 2010**         **s/ Jerome B. Simandle**
Date        JEROME B. SIMANDLE
       United States District Judge